UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,              | No. 2:11-cr-00458-GEB      |
|----------------------------------------|----------------------------|
| Plaintiff,                             |                            |
| v.                                     | **ORDER ON MOTIONS IN LIMINE** |
| BUENA MARSHALL, and DEBORAH LOUDERMILK,|                            |
| Defendants.                            |                            |

The government and Defendant Loudermilk each move for pretrial in limine rulings. Each motion is addressed below.

**A.  The Government's Motions**

**Motion in Limine No. 1**

"The government [seeks] to bar the admission of any evidence or testimony regarding the acquittal of four defendants . . . in a separate mortgage fraud scheme . . . case . . . [captioned] United States v. Charikov, 2:12-CR-003-LKK (E.D. Cal. Aug. 2014)." (Gov't Mot. Limine ("MIL") No. 1 1:18-21, ECF No. 143.) The government argues:

> Testimony or argument regarding the Charikov trial is irrelevant and highly prejudicial, and should therefore be excluded under Federal Rules of Evidence [("Rules")] 401, 402, and 403. It is also inadmissible hearsay.
>
> The defendants in the Charikov case were charged and tried for fraud related to the

1

> purchase of two properties. The case involved different defendants, different properties, and different facts. Thus, the Charikov jury verdict has no relevance to this trial or these defendants and is therefore inadmissible. Further, the jury verdict in the Charikov case is hearsay: Rule 803(22) allows admission of judgments of conviction, not judgments of acquittal.

(Id. at 1:21-26 (citations omitted).)

This in limine motion is unopposed and is GRANTED.

**Motion in Limine No. 2(a)**

The government "asks the Court to bar the defendants from presenting evidence or eliciting testimony regarding lender negligence or fraud." (Gov't MIL No. 2, 2:4-6, ECF No. 145.) The government argues:

> At minimum, the defendants should be prohibited from putting on a lender negligence or fraud defense and should be limited to challenging lender representatives with respect to the issues to which they testify.
>
> . . . .
>
> In order to prove the mail . . . fraud charges, the government must prove that the statements or omissions by the defendants were material. Materiality is objectively measured as whether the statements had a natural tendency to influence, or were capable of influencing, a person to part with money or property.
>
> . . . .
>
> The relevant question is the objective tendency or capability of a false statement to influence a decision, and not the subjective or actual reliance on that statement by the victim. Reliance is simply not an aspect of the materiality element in mail-fraud prosecutions. . . .
>
> Because it does not go to an element, a "blame the lender" defense is really just a nullification defense. Whether a mortgage

2

> lender acted prudently is irrelevant to whether the defendants acted with intent to defraud.

(Id. at 2:8-10; 4:1-6:15 (internal quotation marks, citations, and brackets omitted).) The government further argues:

> Alleged fraud by the victim lending institutions is also not a defense to [mail] fraud charges. . . .
>
> Like with negligence, the focus on the materiality element must be on the maker of the statement, and whether the statements are capable of influencing the person to whom they are made, not on the actions of one specific victim. If the statements are ones that a reasonable lender would consider important, then they are material, regardless of what any individual lender may have done or not done. . . .
>
> The defendants cannot escape liability by arguing that agents of the lender were in on the scheme. Courts have affirmed bank fraud convictions even when assuming that bank representatives themselves knowingly participated in the fraud.

(Id. at 8:8-13 (citations omitted).)

Defendant Marshall indicates the Government's position is correct and states she "will not assert a defense of 'lender fraud' or 'lender negligence.'" (Marshall's Conditional Opp'n to Gov't MILs 2 & 3 ("Marshall Resp.") 1:18-21, ECF No. 147.) However, she states she "will argue about whether or not the statements were material," and "will point out as part of the defense that the credits back and payments to the buyer were disclosed to the lender and seller." (Id. at 1:22-2:1.) The government states in its reply that it "has no objection to such lines of questioning or argument." (Gov't Reply 2:12-13, ECF No. 157.)

Defendant Loudermilk "objects to the motion insofar as it seeks to exclude . . . evidence . . . of lender fraud in the form of lender knowledge of false statements in the relevant loan applications." (Loudermilk's Resp. to Gov't MILs ("Loudermilk Resp.") 2:19-23, ECF No. 149.) Defendant Loudermilk contends:

> For the government to prove that [she] committed mail fraud with respect to these transactions, it must prove [as an element] . . . that . . . she "acted with the intent to defraud; that is, the intent to deceive or cheat".
>
> Evidence which indicates that the lenders[' agents] involved in these two transactions knew that false information was presented to them for purposes of securing the loans involved and accepted and acted on the loan applications with that knowledge is relevant to the issue of whether or not Miss Loudermilk intended to "deceive or cheat" the lenders. A person who knows that a false statement is being made to him cannot be "deceived" or "cheated" by that statement.
>
> Therefore, to the extent, if any, that Miss Loudermilk knew of false statements being made in the loan applications, she is entitled to present to the jury, either directly or through cross-examination of government witnesses, evidence that the lenders[' agents] involved in these two transactions knew that the loan applications contained false information.

(Id. 2:27-3:16 (citation omitted).)

Defendant Loudermilk's argument is tantamount to presenting a lender fraud defense. However, she cites no authority in support of this defense. Further, her argument does not address the bank fraud cases[1] cited by the government which

---

[1] "[T]he bank fraud statute directly tracks or is parallel to the mail and wire fraud statutes." United States v. Mason, 902 F.2d 1434, 1441 (9th Cir. 1990), overruled on other grounds by Dixon v. United States, 548 U.S. 1 (2006). "The legislative history clearly establishes that the bank fraud statute was 'modeled' on the mail and wire fraud statute." Id. "In enacting

support its contention that "defendants cannot escape liability by arguing that agents of the lender were in on the scheme." (Gov't MIL No. 2 9:1-2; see id. at 9:2-13.) "[I]t is the financial institution itself—not its officers or agents—that is the victim of the fraud . . . ." United States v. Molinaro, 11 F.3d 853, 857 (9th Cir. 1993).

"[T]he jury [will be] tasked with determining whether [Defendant Loudermilk] acted with intent to defraud, not whether [each] lender[']s [agent] knew about the fraud." United States v. Holzendorf, 576 F. App'x 932, 936 (11th Cir. 2014) (affirming district court's refusal to instruct the jury on "whether the lenders knew about the fraud."); see also United States v. Svete, 556 F.3d 1157, 1165 (11th Cir. 2009) ("[T]he focus of the mail fraud statute . . . is on the violator[; hence,] . . . the purpose of the element of materiality is to ensure that a defendant actually intended to create a scheme to defraud."). Accordingly, Defendant Loudermilk's conclusory argument that a lender's agent's knowledge concerning the alleged misrepresentations is "relevant to the issue of whether or not [she] intended to 'deceive or cheat' the lenders" concerns an issue that has a tendency to confuse the jury; and it has not been shown that the referenced evidence has probative value on the indicted offenses.

Therefore, this portion of the motion is granted.

**Motion in Limine No. 2(b)**

"[T]he government [also] asks the Court to bar the

---

the bank fraud statute, Congress also took into account the body of case law accompanying the mail and wire fraud statutes." Id.

admission of evidence concerning (1) Department of Justice settlements with banking institutions, and (2) the securitization of mortgage backed securities, in general, as irrelevant and unfairly prejudicial under [Rules] 401, 402 and 403." (Id. at 2:11-14.) The government contends: "[t]his case is about whether the defendants schemed and mailed, and should not be turned into a referendum on banks' lending practices." (Id. at 2:11-15.)

This portion of the government's second in limine motion is unopposed and is GRANTED. (See Loudermilk Resp. 3:18-20 ("Miss Loudermilk concedes that evidence of Department of Justice settlements with banking institutions and securitization of mortgage backed securities is irrelevant and therefore inadmissible.").)

**Motion in Limine No. 3**

"The government asks the Court to prohibit the defendants and their counsel from referring . . . to the potential penalties in this case, including statutory maximums, statutory minimums, and sentencing ranges." (Gov't MIL No. 3 1:18-20, ECF No. 144.) The government argues:

> It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed. This principle reflects a basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Thus, information regarding potential penalties, statutory maximums or minimums, or sentencing ranges is therefore irrelevant to the jury's task. Moreover,

>   providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. Such arguments or comments should be prohibited.

(Id. at 1:21-2:6 (internal quotation marks and citations omitted).)

Defendants Loudermilk and Marshall do not oppose this motion to the extent it concerns only the potential penalties that may be imposed against them if they are convicted of the charges in this case. (Loudermilk Resp. 4:5-8 ("Inasmuch as this motion addresses only potential penalties which might be imposed on Miss Loudermilk in the event of her conviction . . . she concedes that it is well-taken."); Marshall Resp. 2:3-5 ("The defendant will not introduce evidence of punishment for this crime as it relates to this defendant, as requested by the government.").) However, each Defendant opposes the motion to the extent it is construed more broadly to preclude cross-examining "cooperating witnesses who are co defendants about their potential criminal exposure and their bias in testifying favorably for the government." (Marshall Resp. 3:15-18; see also Loudermilk Resp. 4:9-18.)

The Court construes this in limine motion in the narrow manner that is unopposed by each Defendant. Accordingly, it is GRANTED.

**B.   Defendant Loudermilk's Motions**

**Motion in Limine No. 1**

Defendant Loudermilk moves under Rule 615 "to exclude from the courtroom all witnesses not currently testifying."

7

(Loudermilk MILs 2:6-8, ECF No. 146.)

This motion is unopposed and is GRANTED with the understanding that it exempts from exclusion the individuals Defendant Loudermilk identifies in her Trial Brief. (Loudermilk Trial Brief 2:18-22, ECF No. 161.) However, counsel are expected inform witnesses about this exclusion.

**Motion in Limine No. 2**

Defendant Loudermilk moves under Rule 609(a)(2) "to permit Miss Loudermilk to impeach the credibility of former co-defendants and now prosecution witnesses with their convictions of felony offenses in this case and, regarding potential witness Jake Weathers, a related and similar case." (Id. at 2:14-18.)

The extent of this requested ruling is unclear since the referenced impeachment issues routinely occur in criminal trials. Defendant Loudermilk has not shown that a controversy exists concerning the referenced evidence and that an in limine ruling is necessary.

**Motion in Limine No. 3**

Defendant Loudermilk also seeks "[t]o exclude documentary evidence expected to be offered by the prosecution on the ground that it is irrelevant as to the charges against Miss Loudermilk; or, in the alternative, to restrict the admissibility thereof and to instruct the jury accordingly, pursuant to [Rule] 105." (Id. at 5:1-5.) Defendant Loudermilk states, *inter alia*:

> Defendant Loudermilk has stipulated (Document 142) that the documents listed in the stipulation are true and correct copies of business records and that they are admissible in this trial, unless objectionable on grounds of relevance or pursuant to . . . Rule 403.

8

>        Miss Loudermilk also concedes that [certain] documents listed in the stipulation are relevant and admissible with respect to the two counts in which she is charged . . . .
>
>        . . . .
>
>        With respect to all other documents listed in the stipulation, Miss Loudermilk objects to their admission on the dual grounds that they are irrelevant . . . and that the probative value of these records with respect to Miss Loudermilk is substantially outweighed by the unfair prejudice and misleading effect of the evidence on the jury . . . .

(Id. at 5:7-6:15.)

The government rejoins that "[t]he ruling requested by the defendant is premature and, for the time being, should be denied." (Gov't Resp. Loudermilk MILs 1:20-21, ECF No. 148.) The government contends:

>        In her motion, the defendant failed to provide any explanation or reason in support of her summary conclusion that the documents are "irrelevant" and unfairly prejudicial.
>
>        To the contrary, the government believes the documents are in fact relevant to the charges at issue and tend to demonstrate co-schemer liability. . . .
>
>        . . . .
>
>        Here, without explanation or support, the defendant has made sweeping allegations of irrelevance and prejudice to approximately 14 classes of documents in a case involving a financial fraud scheme. The documents placed at issue by the defendant (approximately 1,200 pages) consist primarily of bank records and other financial documents. There is also a set of phone records. Despite her burden, the defendant failed to provide the Court with any information as to the inadmissibility or prejudice of any individual document, let alone the broad classes of documents she now seeks to exclude.

9

> At this point, the Court lacks sufficient information to exercise its discretion whether to admit or exclude evidence. Without more information, the Court simply cannot make the ruling requested by the defendant and risks abusing its discretion. As such, the defendant's motion should be denied. At a minimum, the government asks the Court to defer ruling as to the relevance and admissibility of these documents until they are presented in context during trial.

(Id. at 1:21-2:22.)

In light of the government's response and the vagueness of the motion, this motion has not been stated with the specificity required for a pre-trial in limine ruling.

Loudermilk also requests the Court "take the motion under submission pending presentation of the foundational and relational testimony." (Loudermilk Reply 2:17-19, 4:13-15, ECF No. 151.) This request is denied.

Dated:  March 2, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge